STRENGTH, County Judge, et al. v. BLACK et al. (No. 2318.)*

(Court of Civil Appeals of Texas. Texarkana. Dec. 8, 1920. Rehearing Denied Dec. 16, 1920.)

1. Counties &⇒178—Purpose not stated in notice of road bond election not binding, though commissioners' court ordered disposition of proceeds for such purpose.

Under Rev. St. arts. 606, 629, requiring that the proposition submitted to the electors of a county for the issuance of bonds for road construction, as authorized by article 637a, subds. 3, 4, as amended by Acts 36th Leg. (1919) c. 38, shall distinctly specify the purpose for which the bonds are to be issued, and that notice of such election shall be given, it is necessary that the purposes of the election should appear in the official notice, so where the purpose stated was to determine whether bonds should be issued to the amount of $1,-750,000 to purchase improved roads, etc., and construct others, an order of the commissioners' court, made a few days before election, specifying that if the bond issue should carry, certain roads should be improved, which was not incorporated in the election notice, will not control disposition of the funds derived from the bond issue.

2. Counties &⇒178—Where order of commissioners' court was not part of election notice, it does not control, though voters relied on it.

Where the commissioners' court a few days before an election on the proposition to issue road bonds entered an order specifying that certain roads should be constructed, but such order was not included in the official notices, the fact that voters relied on the order and were thus induced to vote for issuance of the bonds does not deprive the commissioners' court of authority to repeal the order and dispose of the proceeds of the bonds in improving other roads.

3. Counties &⇒178—Order of commissioners' court as to disposition of proceeds of road bonds not binding where made prior to election.

Where prior to an election on the proposition to issue road bonds the commissioners' court made an order reciting that if the issue should carry particular roads should be improved, the order was provisional, and may be altered, repealed, or amended by the court, for, under Rev. St. arts. 605, 619, bonds can issue only after an election authorizing them, and hence, until executed, the commissioners' court had power to alter or repeal such order.

4. Injunction &⇒88—Discretion of an inferior tribunal will not be enjoined.

As the commissioners' court has discretionary power as a board to determine what roads will be improved with the proceeds of bonds, such power will not be controlled by injunction.

5. Contracts &⇒108(2)—Commissioners' court may change order as to roads to be improved despite contract.

As the law constitutes the commissioners' court a board to designate the particular roads of a locality to be improved with the proceeds of road bonds, an order, made prior to election, which designated the particular roads to be improved at any subsequent time, if fairly done, may be changed, and no previous contract would prevent.

Levy, J., dissenting.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by J. M. Black and others against W. H. Strength, County Judge, and the County Commissioners of Harrison County. From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

More than 250 resident property taxpaying voters of Harrison county petitioned the commissioners' court to order an election to determine whether or not bonds of the county to the amount of $1,750,000 should be issued for road construction purposes "throughout the county," as authorized by subdivisions 3 and 4 of article 637a of the statutes, as amended by Acts 36th Leg. c. 38. On March 10, 1919, the commissioners' court entered an order for an election to be held in the county on April 19, 1919—

"to determine whether or not the bonds of said county shall be issued in the amount of one million, seven hundred and fifty thousand dollars for the purpose of purchasing or taking over the improved roads already constructed in said road districts, and of further constructing, maintaining and operating macadamized, graveled or paved roads and turnpikes throughout said county as follows: 1. Bonds to be issued in the aggregate sum of three hundred thousand dollars for the purpose of purchasing or taking over improvement district roads already constructed in such county, to have the same dates of maturity, bearing the same rate of interest and similar options of payment as the outstanding bonds of such road district. 2. Bonds to be issued in the aggregate sum of one million, four hundred and fifty thousand dollars for the purpose of further constructing, maintaining and operating macadamized, graveled or paved roads and turnpikes throughout said county, to mature at such times as may be

fixed by the commissioners' court, serially or otherwise, not to exceed forty years from that date, and to bear interest at the rate of five per cent. per annum."

A copy of the order was published for four consecutive weeks in a newspaper as the official notice of the election. On April 14, 1919, at a regular term of court, and five days prior to the election, the commissioners' court entered upon the minutes of that court the following order:

"It is moved and carried that if the bond issue should carry that the Hynson Springs Road be improved from Marshall to the intersection of the Longview and Jefferson road, and that the Longview and Jefferson road be improved from said point of intersection to the Gregg county line, and the Hallville and Harleton road be improved from Hallville to Harleton. It is also moved and carried that if the said bond issue should carry that the road from Harleton to the county line by way of Smyrna be improved, and that the road from Harleton to the county line by way of Eagle creek be improved."

The election was held on April 19, 1919, and the bond issue was carried by a vote of 1,740 for and 162 against. The appellees, taxpaying citizens, brought the action "in behalf of themselves and in behalf of more than 150 other taxpayers and citizens of said county" against the county judge and each of the county commissioners, appellants, praying that—

(1) "A writ of mandamus be granted against the defendants commanding them to expend the proceeds of said bond issue equitably among the roads herein designated," and (2) "in the event your honor should hold that the plaintiffs are not entitled to the relief so prayed for, then in the alternative they pray that the defendants and their successors in office be enjoined from abrogating, vacating or disregarding the order of the commissioners' court of Harrison county, made on April 14, 1919," and (3) "requiring the defendants to improve the roads designated in said order by graveling or macadamizing same out of the proceeds of said bond issue, and to set apart the sum of $9,000 per mile, or a total of $243,000, for said purpose."

The petition alleged that the order of April 14, 1919, was made by the commissioners' court at a regular term of the court after a committee representing a large number of voters in the northwestern commissioners' precinct of the county had requested and urged the necessity therefor, and that the plaintiffs and others were induced by the order so made to vote for the issuance of said bonds, and without such order the election would not have carried. The petition further alleged that after the election was held and duly declared bonds were issued and approved as required by law, and $600,000 of the same were sold, the county retaining $850,000 thereof with a view of selling such bonds as the road work progressed; that

the said order of April 14, 1919, is a valid and binding and subsisting order; and notwithstanding that the commissioners' court have unlawfully disregarded and departed from said order and are threatening to and will consume and spend all of the proceeds of the bond issue on two or four other roads in other parts of the county, to the irreparable injury of the plaintiffs and the public they represent. It was further alleged that there was a misapplication and improper handling of the funds in the manner in which the amount is to be expended upon the four particular roads laid out and to be improved.

The defendants filed a demurrer and a general denial, and specially answered that they were in good faith expending the proceeds of the bond issue for the purposes stated in the election order in such manner as to give the entire public an equal distribution of the benefits of the bond issue, and intended to improve the roads of the county in their order of importance as arteries of travel and commerce, and not in any particular section or locality.

The case was submitted to the court without a jury, and judgment entered in favor of the plaintiffs that the defendants be—

"enjoined and restrained from using $130,000 of the proceeds of the good roads bonds voted by the citizens of Harrison county at an election held on the 19th day of April, 1919, and that the defendants shall be and are hereby required and enjoined to preserve and keep on hand said sum out of said bond issue for the purpose of being used and expended in building and improving the Marshall and Gilmer road from Marshall to its intersection with the Jefferson and Longview road, the Jefferson and Longview road from said point of intersection to the Gregg county line, the Hallville and Harleton road from Hallville to the intersection of said road with the Longview and Jefferson road; said roads being a part of the roads named and designated in the order of the commissioners' court adopted April 14, 1919, and recorded in the minutes of the commissioners' court of Harrison county, Book G. p. 243. The said defendants and each of them are permanently restrained and enjoined from using said sum of $130,000 for any other purpose save and except the building and improvement of said roads, which sum of money may be set aside in cash or bonds or part cash and part bonds of the value of $130,000. And it is further ordered that this injunction herein granted shall not effect any of said bond issue or the proceeds thereof except as above specified, and that said defendants are privileged to expend the remainder of said bond issue in constructing other roads according to their discretion. It is further ordered that the plaintiffs' prayer for mandamus be and the same is here denied."

The court made the findings of fact (1) that—

"The order of April 14, 1919, was made by the commissioners in the minutes of the court at a regular term, and that the order is unrepealed and has not in any official manner been

modified or altered by the commissioners' court:" (2) that "on the 8th day of December, 1919, the commissioners' court entered an order upon its minutes, recorded in volume G, page 346, appropriating out of said bond issue the sum of $462,704.33 for the purpose of constructing and reconstructing the Jefferson Highway running from the Gregg county line through Marshall in an easterly direction to the state line, aggregating 39.43 miles, providing that said sum of money is subject to the state highway commission, and pledging the good faith of the county that said road during and after its improvement shall be maintained to the satisfaction of the highway department of the state and the Department of Agriculture of the United States. It is further the intention of the court to procure state and national assistance to build this road to the amount of two hundred thousand ($200,000) dollars. I find that it will cost approximately from $650,-000 to $710,000 to construct this road according to the specifications that will be satisfactory to the authorities of the state and nation, provided they furnish such state or national aid. I find that the commissioners' court will in all probability secure aid to the amount of $200,000 from the state and nation, and will construct said road first at a cost approximating the above named amount:" (3) that "the commissioners' court intend to and will build other roads out of the proceeds of said bond issue before any attempt is made to build any of the roads designated in the order of April 14, 1919, that their road building policy is to build the roads in the order of their importance to the county according to their judgment until the funds are exhausted, and that after building the roads upon this policy if the money holds out they will build the roads designated in said order of April 14, 1919, but not otherwise. It reasonably appears, and I find as a fact, that if such policy is pursued to the exhaustion of the fund the plaintiffs will be deprived of the improvement of the roads in which they are particularly interested, as described in their petition and being part of the roads named in the order of April 14th for improvement:" (4) that "the commissioners' court are not wasting or squandering the bond issue, and that their policy of road building, as announced, is not out of harmony with the purposes for which a part of the bonds were to be used according to the terms of the order of April 14, 1919."

The remaining findings of the court are here adopted and made a part of the record, and need not be set out.

Bibb & Caven, of Marshall, for appellants.

Cary M. Abney, H. T. Lyttleton, and Franklin Young, all of Marshall, for appellees.

LEVY, J. (after stating the facts as above). The appellants insist that the appellees were not entitled to the injunction granted in this case, because the order of the commissioners' court of April 14, 1919: (1) Was not a part of the order for the election to determine whether or not the bonds should be issued; (2) was only a conditional order before the bonds were voted and issued, and was not an au-thorized exercise of the power of the commissioners' court; and (3) the discretionary power conferred upon the commissioners' court to determine the roads to be improved with the proceeds of bonds cannot be interfered with by injunction.

The order of April 14, 1919, on which this suit rests, was made by the commissioners five days before the day of election on April 19, 1919. The order, it appears, "was never published as a part of the election notice or election proceedings." The election as originally entered and officially published stated the purpose of the election to be:

"To determine whether or not the bonds of said county shall be issued in the amount of one million, seven hundred and fifty thousand dollars for the purpose of purchasing or taking over the improved roads already constructed in said road districts, and of further constructing, maintaining and operating macadamized, graveled or paved roads and turnpikes throughout said county."

[1, 2] The statute requires that the proposition to be submitted for the issuance of the bonds shall distinctly specify the purpose for which the bonds are to be issued, and that notice of such election shall be given. Articles 606 and 629, Rev. Civ. Stat. And it has been held that the purposes of the election should appear in the official election notices. Grayson County v. Harrell, 202 S. W. 160. In this view it cannot, under the facts, be held that the order of April 14, 1919, legally constituted a part of the purposes of the election voted on by the county. The appellees, though, assert that they and others were induced to vote for the bond issue on the faith of the order of April 14, and that the same should be held to be a part of the purpose of the election. We think it has been contrarily held, in virtue of the statutes, in this state, in Grayson v. Harrell, supra. In that case it is said:

"The voters can have no official notice or knowledge of the proposition submitted to them, except as contained in these proceedings, which are the means designated by law of declaring and making known to the voters the proposition on which they are voting. It would be dangerous to hold that the commissioners' court could recite in its order for the election one purpose or proposition, and by some other action or order, not made a part thereof, and not referred to in the official notice of election, inject into the proposition limitations or conditions so that the actual result of the election would be to carry a different proposition from that actually voted on according to the official record and notices of the proposition submitted."

[3-5] Consequently, as the order of April 14 was not legally a part of the order and notice of the election, the right of appellees to the relief granted must depend upon the validity of that order in other respects. The order stated that "if the bond issue should

carry," then the particular, roads named should be improved. The language would indicate that the order was intended only as a provisional and conditional one. And it was made and entered before the bonds were authorized to be issued by a vote of the county. The statute provides that the bonds can issue only after the election authorizing them. Articles 605, 619, Rev. Civ. Stat. The commissioners' court can amend, alter, or repeal the order, even if valid; and, having this power, the courts cannot enjoin their discretion or judgment. The law constitutes the commissioners' court as a board to designate the particular roads of a locality to be improved, and they have the power to change a previous order at any subsequent time, if fairly done, and no previous contract would prevent. Grayson County v. Harrell, supra; Tyree v. Road District, 199 S. W. 648. It is therefore concluded that the judgment of the trial court was erroneous, and should be reversed and here rendered in favor of the defendants, with all costs of suit.

The writer, though, does not agree that the order of April 14, 1919, may not in this case be held to be a part of the election proceedings, and not a subject-matter of injunction. The order of the court and the published notices of it designated the purpose of the proposed bond issue of constructing and maintaining macadamized or graveled roads "throughout said county." "Throughout said county" is a general term, and means in every part of said county. And it became the duty of the commissioners' court, which they could not depart from, to expend the proceeds of the bonds "throughout the county." Moore v. Coffman, 200 S. W. 374. The northwestern commissioners' precinct, here involved, as well as all the other precincts, was entitled to some of the proceeds, equitably distributed, for road improvement. Article 6949, R. S. The order of April 14 merely named and designated certain particular roads to be improved, which, as shown in point of fact, were located in the northwestern commissioners' precinct of the county. And neither does the order of April 14 operate in point of fact or in words to exclude other roads of the several precincts of the county from receiving the proper proportion of the bond issue for road improvement. It is clearly within the general power of the commissioners' court to select the particular roads to be improved in each part of the county. Therefore this order of April 14 was not in point of fact or in words contrary to or contradictory of the former order of the court, but legally within its terms. The trial court found that this order in controversy "is unrepealed, and has not in any official manner been modified or altered by the commissioners' court." And as the order was put of record, as required by article 2276, R. S., and intended to be a supplementary

part of the election, and being consistent with the order of the election and the notice of it, the trial court, I think, correctly held the order valid. Scott v. Forrest, 192 S. W. 691. I think the judgment should be affirmed.

In accordance with the opinion of the majority of the court, the judgment is reversed, and here rendered in favor of the appellants, with all costs of court.

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes